UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FABIAN PINA,<br><br>　　　　　Defendant. | CAUSE NO. 3:20-CR-78(1) DRL-MGG |

OPINION & ORDER

The government charged Fabian Pina with conspiracy to distribute over 500 grams of cocaine. *See* 21 U.S.C. §§ 841(a)(1), 846. On September 17, 2020, Mr. Pina sought to suppress evidence obtained by law enforcement the day of his arrest. The court held an evidentiary hearing on October 26, 2020 given the factual discrepancies. *See United States v. Coleman*, 149 F.3d 674, 677 (7th Cir. 1998); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). The court now denies the motion to suppress.

FACTUAL FINDINGS

On a clear and sunny August 1, 2020, Indiana State Police Trooper Andrew Rasala sat in the median of I-94 at the 27.6-mile marker where he routinely parked to observe eastbound traffic (Tr. 7-8). He had a clear view from his vantage point out about 250 feet (Tr. 9, 45). Around 11:40 a.m., he observed a white Chevy Silverado—driven by Fabian Pina—approach in the inside left lane and make an abrupt lane change to the middle lane without using a turn signal (Tr. 9).

Considering this a traffic violation under Indiana law, Trooper Rasala decided to stop the vehicle. Traffic was dense, so he had to wait to merge onto the highway. Trooper Rasala took about seven miles (8-10 minutes) to catch up safely with Mr. Pina's truck, though he never lost sight of it (Tr. 9-10). After nearing the truck, Trooper Rasala continued to follow it for a while longer because they were then in a construction zone. He left his lights and siren off for the moment (Tr. 10).

In the construction zone (unmanned because it was the weekend), Trooper Rasala saw the truck move into the left lane without activating a turn signal until its left tires were already in the other lane, which Trooper Rasala believed to be a violation of state law because a turn signal wasn't activated in advance (Tr. 11). Mr. Pina testified that he initially switched lanes to avoid a vehicle in front of him that was swerving and almost collided into construction zone cones (Tr. 74-75). According to Trooper Rasala, the white Silverado moved back into the right lane without activating its turn signal until it was partially in the right lane (Tr. 11).

Trooper Rasala turned on his emergency lights and initiated a traffic stop for what he testified were three lane violations (Tr. 11). The truck complied. Trooper Rasala approached the passenger window to speak with Mr. Pina (Tr. 13). Mr. Pina sat in the driver's seat, and Luis Gonzalez sat in the front passenger seat. Mr. Gonzalez had been sleeping until the car was pulled over. Trooper Rasala immediately smelled the odor of burnt marijuana in the truck at the window, though he didn't tell either occupant (Tr. 13). Trooper Rasala informed Mr. Pina that the reason he stopped him was for improperly changing lanes (Tr. 39-40). He obtained licenses from both gentlemen, returned to his squad car to run standard checks on the truck and licenses, and ordered Mr. Pina to join him outside the car to facilitate communication (Tr. 13-15, 29).

Trooper Rasala asked Mr. Pina about their travel plans, and Mr. Pina said that they had left Texas the day before and were heading to Holland, Michigan for migrant work (Tr. 15-16). Trooper Rasala asked if there was anything illegal in the truck (Tr. 16). Mr. Pina said no, "[g]o ahead and search it"—referring to the truck (Tr. 16). Trooper Rasala told Mr. Pina about smelling burnt marijuana in the truck (Tr. 16). Mr. Pina replied that he doesn't smoke marijuana but said Mr. Gonzalez does (Tr. 16). Because Trooper Rasala smelled burnt marijuana, he called backup. Master Trooper Council and Trooper Thomas Maymi later arrived on scene.

Before other law enforcement arrived, Trooper Rasala walked back to the truck and spoke with Mr. Gonzalez, asking him about his marijuana use (Tr. 16). Mr. Gonzalez admitted that he had smoked marijuana in the truck in the past—saying smoking marijuana is "all he does"—but he couldn't remember the last time he smoked it in the truck (Tr. 16-17). Mr. Gonzalez testified at the suppression hearing that, when he was asked why the truck smelled like marijuana, he told Trooper Rasala that "[he] smoked" (Tr. 66). Mr. Gonzalez confirmed that he had smoked marijuana two or three days beforehand; and he had done so in the truck about a week before, after which the truck had been cleaned (Tr. 68-70). Mr. Gonzalez provided a different account of his travel plans (Tr. 17).

When Trooper Maymi arrived, he too smelled the odor of burnt marijuana coming from the truck (Tr. 55). Trooper Rasala searched the truck and discovered a duffle bag in the back seat that contained Dearfoams® loafers (Tr. 19, 31-32). Before any *Miranda* warnings, Trooper Rasala questioned Messrs. Pina and Gonzalez about the bag and loafers, who made statements unspecified on this record (Tr. 32-33). Trooper Rasala pulled the loafers out of the duffle bag and discovered cocaine in their soles (Tr. 32). Later, he found cocaine stored in the shoes Mr. Gonzalez was wearing (Tr. 32). Both men were arrested.

## DISCUSSION

The Fourth Amendment to the United States Constitution establishes the people's right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." As the constitutional text suggests, the "touchstone of the Fourth Amendment is reasonableness." *United States v. Knights*, 534 U.S. 112, 118 (2001). The Fourth Amendment protects a person in his home and on the street, in his room and in his car. It protects people, not places. *Katz v. United States*, 389 U.S. 347, 351 (1967); *see also Terry v. Ohio*, 392 U.S. 1, 8-9 (1968).

Evidence seized in violation of Fourth Amendment rights must be excluded. *Davis v. United States*, 564 U.S. 229, 231 (2011). The admissibility of evidence seized in violation of the Fourth

Amendment is governed by federal law. *United States v. Wilderness*, 160 F.3d 1173, 1175 (7th Cir. 1998) ("We have held repeatedly that evidence may be used [in a federal prosecution] whether or not its acquisition violated state law."). Accordingly, the court doesn't consider whether the evidence here would be excluded under state law; what matters is federal law.[1]

Law enforcement may stop a driver when it has probable cause to believe he violated a traffic law. *United States v. McDonald*, 453 F.3d 958, 960 (7th Cir. 2006). Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It "does not require an actual showing of criminal activity, or even that the existence of criminal activity is more likely true than not." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (quotations omitted). By definition, probable cause looks to probabilities—"examining the totality of the circumstances in a common sense manner," *United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003), and the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)).

Probable cause is determined by reasonable conclusions drawn from the facts known to the officer at the time of the search or arrest. *Maryland* v. *Pringle*, 540 U.S. 366, 371 (2003). A law enforcement officer may act based on firsthand observations or the collective knowledge of law enforcement when officers communicate with each other. *United States. v. Williams*, 627 F.3d 247, 252-53 (7th Cir. 2010); *United States v. Ellis*, 499 F.3d 686, 690 (7th Cir. 2007). The court needn't decide whether Mr. Pina actually committed these traffic violations, only whether law enforcement had probable cause to believe he did. *See McDonald*, 453 F.3d at 960.

Even seemingly minor traffic violations can provide law enforcement officers probable cause to stop a vehicle. *See United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) (following a vehicle too

---

[1] Mr. Pina argues that Trooper Rasala's conduct violates the Indiana Constitution. This argument is beside the point of the Fourth Amendment analysis. *See Wilderness*, 160 F.3d at 1175.

closely); *United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (same); *United States v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000) (driving with cracked windshield); *United States v. Smith,* 668 F.3d 427, 431 (7th Cir. 2012) (failing to signal for a turn); *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) (straddling lanes and failing to signal before a turn, and driving with cracked windshield); *United States v. Willis*, 61 F.3d 526, 530 (7th Cir. 1995) (speeding).

In Indiana, a driver must use his turn signal at least 200 feet before changing lanes or 300 feet if traveling at least 50 miles per hour. *See* Ind. Code § 9-21-8-25. An officer may stop a driver he observes violating this law. *See Shorter v. State*, 144 N.E.3d 829, 836-37 (Ind. Ct. App. 2020). Trooper Rasala reasonably believed he saw Mr. Pina violate this law by changing lanes on a highway without signaling at all and then changing lanes two additional times without adequate advance signaling.

The court credits Trooper Rasala's testimony concerning Mr. Pina's abrupt lane change near the 27.6-mile marker while traveling on I-94 given Trooper Rasala's credibility on the stand, previous experience with this precise location on I-94, his recall of details from the interaction, his line of sight, the day's conditions, and his focus on approaching traffic. Mr. Pina's testimony that he "always" uses his turn signal doesn't indicate that he did so here 300 feet beforehand (given his speed at this location), nor is it credible in light of Trooper Rasala's testimony that the lane change was abrupt.

In addition, though a law enforcement officer would have cause to recall his observation here—the very moment he observed a traffic violation and based on his training—Mr. Pina would have no cause to recall this particular lane change among many during his long trip from Texas given that it occurred 8-10 minutes before Trooper Rasala ever pulled him over and thus 8-10 minutes before Mr. Pina would have any impetus to commit it to sound memory. Witness recall can be shaky even when there's reason to commit an event to memory; it is far less reliable when a witness must try to recall an event then unremarkable to him and unaccompanied by any trigger to remember it, including whether he used his turn signal to make a lane change seven miles up the road. *See, e.g., United*

*States v. Marion*, 404 U.S. 307, 331 n.3 (1971) (Douglas, J., concurring) ("With no knowledge that criminal charges are to be brought against him, an innocent man has no reason to fix in his memory the happenings on the day of the alleged crime. Memory grows dim with the passage of time.") (quoting *Nickens v. United States*, 323 F.2d 808, 813 (D.C. 1963) (Wright, J., concurring)). Mr. Pina's testimony nearly three months later about what he did 8-10 minutes before Trooper Rasala pulled him over isn't credible; nor does the court find his testimony credible that he "always" uses his turn signal before a lane change, and in compliance with the presets of 200 or 300 feet.

Trooper Rasala's testimony concerning a violative lane change in the construction zone is supported by Mr. Pina's testimony. Mr. Pina testified that he had to change lanes quickly at one point because the car in front of him was about to collide with traffic cones (Tr. 74-75). That corroborates Trooper Rasala's reasonable belief about another traffic violation—Mr. Pina switched lanes without activating a turn signal in advance to avoid the vehicle in front of him. In short, Trooper Rasala had probable cause to believe that Mr. Pina's quick lane change was a violation of the law, even if Mr. Pina was avoiding an accident. Trooper Rasala observed Mr. Pina's truck. Trooper Rasala didn't see the vehicle in front of Mr. Pina's truck.

During the stop, Trooper Rasala searched the vehicle without a warrant. Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). The government argues two exceptions here: probable cause to believe the vehicle contained contraband, *see United States v. Ross*, 456 U.S. 798, 807-09 (1982), and Mr. Pina's consent to the search, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The government must show by a preponderance of the evidence that an exception applies. *United States v. Stewart*, 902 F.3d 664, 674 (7th Cir. 2018). The government met its burden on both exceptions.

6

First, law enforcement may search a vehicle "if there is probable cause to believe the vehicle contains contraband or evidence of a crime." *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010). The scent of burnt marijuana—what Trooper Rasala and Trooper Maymi both smelled—provided probable cause for a search. *See United States v. Franklin*, 547 F.3d 726, 733 (7th Cir. 2008); *see also Kizart*, 967 F.3d at 695 ("That the smell of burnt marijuana gave [Officer] Russell probable cause to search the sedan's passenger compartment is not in dispute."). Their observations—independent of each other—were immediate and decisive. That the truck didn't contain marijuana doesn't discredit their testimony. Mr. Gonzalez admitted he had smoked marijuana two or three days before the stop and had smoked marijuana in the same truck a week before. Mr. Pina added that Mr. Gonzalez smoked marijuana, echoing Mr. Gonzalez's statement that is "all he does."

Second, Mr. Pina consented. Consent must be voluntary. *Schneckloth*, 412 U.S. at 222. The court weighs the totality of the circumstances, *United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992), amid the following factors: "the age, education, and intelligence and . . . mental health and capability of the person giving consent; whether the person giving consent did so immediately or only after repeated requests by the police; whether physical coercion was used to obtain consent; and whether the person giving consent was in custody," *United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005).

Mr. Pina told Trooper Rasala to "go ahead and search" the truck—an unequivocal statement of consent. Mr. Pina's denial that he made this statement isn't credible. He and his codefendant effectively corroborated law enforcement's testimony here, excepting only whether Mr. Pina committed a lane violation or consented to the search (Tr. 81). Mr. Pina consented of his own initiative and without prompting from law enforcement. He wasn't physically coerced. Though detained, he wasn't arrested. *See Berkemer v. McCarty*, 468 U.S. 420, 437-38 (1984). Mr. Pina was thinking clearly while interacting with Trooper Rasala; he offered a valid driver's license and recalled geographic locations. Trooper Rasala wasn't required to warn Mr. Pina of the consequences of his consent, *see*

7

*Ohio v. Robinette*, 519 U.S. 33, 39-40 (1996), nor was he required to give *Miranda* warnings during this routine traffic stop, *see Berkemer*, 468 U.S. at 440. Whatever subjective reasons Trooper Rasala had for his search, objectively he had not just probable cause, but consent. *See Bond v. United States*, 529 U.S. 334, 338 n.2 (2000) ("[T]he subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment. . . . [T]he issue is not his state of mind, but the objective effect of his actions.").

Once Trooper Rasala had adequate cause to search the truck, he could lawfully search "all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments, containers, packages, and trunks," *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013) (quotation omitted), so long as it was "reasonable to believe" contraband would be found in those places, *see United States v. Zahursky*, 580 F.3d 515, 523 (7th Cir. 2009). "[T]he smell of burnt marijuana plus other suspicious activity may provide probable cause for the search of an entire vehicle including its trunk," *Kizart*, 967 F.3d at 698, or separate containers, *Franklin*, 547 F.3d at 735. The duffle bag in the back seat of the truck's crew cab falls reasonably within this scope. Accordingly, the fruit of the poisonous tree doctrine isn't implicated by the search or seizure here. *See Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

## CONCLUSION

The Fourth Amendment prohibits unreasonable searches and seizures, not good police work justified by probable cause. Law enforcement here had probable cause and otherwise acted reasonably in the search and seizure. The court DENIES Mr. Pina's motion to suppress evidence (ECF 31).

SO ORDERED.

November 4, 2020                                            *s/ Damon R. Leichty*
                                                            Judge, United States District Court